Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this Honorable Court. Good morning and welcome in a virtual way to the Fifth Circuit. Is anyone in our nation's capital today? The other two advocates? I was thinking that was possible, but God has somebody somewhat closer to our New Orleans location. So we have two arguments today. We have a little extra time on the first case because of the additional advocates participating. That case is United States v. Baltazar-Sebastian, 26-0067. We'll hear from the Houstonian first, Ms. Gray. Good morning, Your Honors, and may it please the court. My name is Catherine Gray and I represent the United States insofar as it seeks to enforce its civil immigration authority against the defendant in her separate administrative proceedings that were not before the district court. This court should reverse the district court's distortion of a routine bail order in a criminal case issued by the magistrate judge. When the magistrate judge directed the U.S. Marshal to release the defendant in her criminal case, the judge was not immunizing her from all other enforcement measures. The district court committed reversible error by expanding the scope of that release order to categorically prohibit civil immigration detention in parallel administrative proceedings. Now, before I get- That's great. I know we've got the jurisdictional issue not raised by the appley, but raised by R Street Institute. And I don't know where you're gonna fit that in, but address if you would, please, address your thoughts about ICE being first in line. In other words, ICE detained the appellee before the criminal proceedings began. And of course, issued a detainer when the defendant was brought up from Jenna, Louisiana for the plea hearing, et cetera, et cetera. Talk about that a little bit, because I think it touches on so many issues in this case, especially this separation of powers. Sure, and I'm happy to address jurisdiction now or on rebuttal, but so your honor is right. ICE initially had detention, or sorry, custody over this defendant. And in fact, ICE had initiated administrative proceedings against the defendant prior to the defendant even being indicted, much less coming before the federal district court for her bail hearing. And so when the district court converted the magistrate judge's bail decision in the criminal case to order her release from immigration custody, before that, ICE didn't have any equities at play in this criminal case, nor would or could it have. And so it was not until the district court took that order and distorted it to apply to ICE. And it's that extension of the criminal release order that we believe is appealable. And that's the, you're talking about the October, very short one page order that the government then moved to reconsider. And then the judge issued his December enforcement order. That's right, that's exactly right. So when the district court issued that October order, we moved to reconsider very quickly. I should say the U.S. attorney's office moved to reconsider quickly and got ICE involved because obviously the October order touched on interests that were outside the scope of the criminal case. And so the U.S. attorney's office didn't need to appeal the magistrate's release order addressing the conditions of release in that limited context of her criminal case under the process provided for in 3145 in order for ICE to take administrative custody under separate authority. And I should say ICE retook custody because as your honor acknowledged, ICE originally had custody over her and was facilitating her transfer to federal court for her criminal proceedings. And so ICE could not have appealed the magistrate's initial September order. It wasn't a party in its own right. It wasn't involved in any way in the criminal case. And more importantly, ICE wouldn't have had any need to appeal that order because the magistrate's order didn't govern ICE. It didn't purport to direct ICE to release the defendant. As is the case in all routine bail orders, it was directed only at the U.S. marshal. And so I think the key point here, your honor, is that it was not until the district court specifically involved ICE and ordered that ICE release the defendant, that ICE's interests were involuntarily invoked in this case. And at that point, at that point, the government can appeal that district court's unauthorized expansion and intrusion into the civil administrative proceedings. Is there some procedure by which, and I know this all springs from the court in United States, in the case in the United States district court, but is there some procedure by which ICE could have in effect intervened in this case? No, your honor. I don't, I can't even imagine how that would work. I mean, typically, and you know, I don't pretend to be a criminal practitioner, but it's my understanding that the only two parties to a criminal case are the government and the defendant. And, you know, the defendant on appeal would have this court believe that the government acts as a monolith, but Congress created separate remedies that can apply to the same individual because it intended those remedies to both apply. And there's nothing- I'll say loosely stated a criminal matter because it's an order of the district court. At the time you filed your brief, you were with the Office of Immigration Litigation. So you're with that side of the street. Correct, your honor. I'm with the civil division within the Department of Justice. And as your honor, I'm sure is aware the U.S. Attorney's Office is, you know, it's within the Department of Justice, but it's, we act, you know, separately. We have different missions and sometimes we play together and oftentimes we play together. But that again, sort of plays into this whole idea that the executive branch is not some monolith just like the judiciary is not a monolith. You know, one, the Fifth Circuit is not the judiciary. It is, you know, one entity, one court within the judicial branch. All right, thank you. And so I really, I think it's useful to address what this case is not about before I get into the district court statutory ruling. And the court statutory ruling is really the only, the only ruling. I mean, it made several stray remarks about various things, you know, concerning its administration of criminal cases, but the statutory ruling is, it's from my reading of the court's opinion, the only thing that it really based its decision on. So getting into what this case is not about. First, this appeal does not challenge the defendant's release from criminal custody or the magistrate judge's criminal bail findings under the VRA. Our challenge is only to the district court's distortion and expansion of that order to prohibit civil immigration detention. Second, ICE has not deported this defendant, and the issue is not whether the government may prosecute someone who ICE has removed from the country. So even if removal itself were an issue, you know, I just, I sort of want to head off of possible concerns this court may have. I feel comfortable conceding that absent the narrow circumstances identified in federal rule of criminal procedure 43, the government could not prosecute a defendant in absentia. And third, also not an issue is whether the defendant's immigration status or the ICE detainer alone justifies denying someone pretrial criminal bail. And I think the district court confused that independent issue with the issue here. And we addressed that at length in the brief, but it's not the government's position that an ICE detainer is an exception to the Bail Reform Act or that the Bail Reform Act treats non-citizens differently than citizens, or that an ICE detainer should have been relevant in the magistrate's individualized bail determination. It's our position instead that such individualized criminal bail determination under the Bail Reform Act do not dictate an immigration judge's separate determinations under the INA and administrative proceedings. Fourth, the court's decision prohibiting immigration detention was not based on, and this is important, it was not based on any violation of any individual constitutional right of this defendant in this case. The court made no reviewable findings about any effect the ICE's custody of this defendant had on criminal proceedings. Instead- I just wanna ask you about that. There certainly is a potential for conflict between the proceedings necessary to pursue the criminal prosecution and ICE detaining people who are subject to those criminal prosecutions in different locations. The points you're making, well-stated in your brief and summarized just now is, at least from your position, there need to be more specificity about how this interfered. But it does seem to me the reality is there that there can be interference. Is that just a matter for, I mean, how can the district judge play any role in that to prevent the interference in your view of this case, or of this issue, not specifically this case? So I certainly think it would be appropriate to take up anything that did interfere on the facts presented and justifiable by evidence presented in the record. At that point, that could be taken up by the district court. If, for instance- No, but it seems to me that in making our ruling, we need probably to define sort of to some extent what the boundaries are. And I guess my sense of Judge Reeves believe that detention in whatever location is the current detention, or would have been the current detention had she not been released, that detention there is interfering with the ability of her counsel to deal with her, to have hearings in his court here in the Jackson Courthouse, which is where the three of us are, the three judges. Just, are you saying Judge Reeves, what authority would he have to in a sense require ICE to do something differently than they wanna do? A couple of points to that, Your Honor. So there is the ability, and this is done in all of these cases. It's been done for decades. It's done with parallel state and local proceedings as well. There's the ability to written a defendant to the federal court for his or her criminal proceedings. That's what was done here. ICE initially had custody, as Judge Barksdale pointed out, and ICE transferred custody of this defendant to the marshals once she was criminally indicted and a criminal warrant was issued for her arrest. At that point, after the defendant had her bail hearing in September, pursuant to the magistrate judge's signing of that writ and acknowledgement that ICE had original custody and the defendant should be returned to ICE's custody, the defendant was written back into ICE's custody. And then at that point, ICE delivered her, also pursuant to the writ, for her pretrial hearing in the criminal case. And so there's no evidence in the record. There's no factual finding by Judge Reeves in this case that her ICE detention interfered in any way with the criminal case. And in fact, the record compels the opposite conclusion for the reasons I just identified. And so- But counsel, you're talking about having her available for hearings. What about having her more accessible to her counsel for preparation for hearing, for matters that are pretrial? If she's detained under ICE, they're gonna have her in Louisiana, is that right? That's right, Your Honor. And so doesn't that impair or impede her ability to prepare her defense? So I think under the right facts in a case, there is certainly the potential for that to happen. There are no facts in this case indicating that that happened, and the district court made no factual finding that that happened. And going back to the transcript from the November, the mid-November hearing on the government's motion to reconsider, we put an ICE representative on the stand so that Judge Drews could hear from ICE and understand the process, understand the ICE facility where the defendant was detained. The evidence showed that the defendant had access, free access of no charge to iPads where she could video conference with her counsel. She had 24-hour access to a phone where she could speak with her counsel. All of these things were made available to her. And there are many decisions, including two, at least two, of the unanimous circuit authority where the defendant was held at a state other than where the defendant was being criminally prosecuted. And in fact, in the D.C. Circuit case, which I'm very familiar with because I handled it, that defendant was detained in Virginia. The prosecution was in D.C. And same thing, the defendant was written back and forth. Defense counsel made a vague claim about access to counsel being infringed upon, but produced no individual or specific facts that that counsel was actually infringed upon. But I- which may have been Judge Gray's point too, but I think it was important for you to address, at least hypothetically, let us say the evidence is there, that it is interfering with the preparation. What would Judge Reeves or any other district judge's authority be in your situation of these independent authorities governing ICE and governing the criminal prosecution system? What would his authority be to require her either to be released in Mississippi, where she'd be more closely available to lawyer, or in some way to change what ICE wants to do prior to the trial? So I think the overarching principle that any decision in that case, in that hypothetical, would require is that a constitutional violation cannot be found in a vacuum. And so again, you have to have specific facts demonstrating that. I think under your hypothetical, and it is a hypothetical, because I really need to make that clear. We got it. Okay, okay. I just want to make that clear. It's clear, move on. Okay, so under the hypothetical, I think that there are various things that the district judge could do to remedy that. The extreme remedy being to step into the lane of the administrative process and dictate how an administrative judge handles its separate proceedings. There was a recent district court decision where the defendant was actually removed from the country and the district court permitted her criminal prosecution to continue because the court found that modern technology allows for counsel's alleged access issues to be remedied through FaceTime, phone calls. And so I think that something less than intruding into the civil immigration process would be required if access to counsel truly rose to the level of a constitutional violation. I think at that point, and that's the only point where the district judge has authority to remedy that constitutional violation. I counseled, you're mentioning there are no findings of fact concerning interference with trial preparation, et cetera. The issue wasn't even raised in district court, was it? Isn't it being raised for the first time on appeal? That's right, your honor. It was loosely raised by defense counsel during the November hearing. I will say that. So defense counsel mentioned, or I'm sorry, during the October 15th hearing, and I was not there for that hearing, but my understanding based on the transcript is that defense counsel noted that when ICE retook custody of her, that she was not initially aware of where her client was. And she also conceded that the defense counsel at the AUSA at that point immediately informed her how she could locate her client. And there were no other allegations, much less facts or any evidence in the record at any point in the magistrate hearing or the district court two hearings suggesting that the right to counsel or the right to prepare a defense, as Judge Graves mentioned, was interfered with at any point in this case. And so on appeal, to the extent that the defendant raises that, again, I don't even think that her allegations are clear on appeal, but to the extent that she's raising that for the first time now, that's plainly not reviewable. And so I also wanna know as a final point of what's not at issue here is that there was also no factual finding or any evidence in the record that ICE's detention of this defendant was pretextual or in bad faith. And again, the record compels the opposite conclusion that ICE's detention was for the proper purpose of pursuing the immigration proceedings against her. ICE detained and initiated proceedings before the criminal indictment. And so all that's on review now before this court, as far as the district court's decision goes, is whether the district court erred as a matter of law in holding that the defendant's civil immigration process must see to the criminal process when the defendant is released under the Bail Reform Act. And I see that my time is about to elapse. So unless your honors have any further questions, I'm happy to continue on rebuttal. I was about to say pass the witness. So that's fine. We'll let Ms. Lopez question the witness now or whatever she wants to do. Thank you, your honors. Good morning and may it please the court. Janine Lopez on behalf of the appellee, Melissia Baltazar Sebastian. The September 3rd release order unequivocally directed the United States Marshal to release Ms. Baltazar Sebastian from custody. The government chose not to seek review of that decision, which creates jurisdictional problems that Amicus Council, Mr. Rowan is planning to address. Well, I noted, it doesn't matter. We address our jurisdiction, so it's fine to say, but I noted you had no statement of jurisdiction in your brief. So you certainly didn't challenge jurisdiction. Correct, your honor. At the time we filed the brief, we did not challenge jurisdiction. The Amicus Council- And you didn't even make a statement of jurisdiction. No, correct. And we were at the time agreeing with the government's characterization. The Amicus Council developed the jurisdictional argument independently, and we agree with it on further review. We think the government did have an opportunity to seek review of the release order, should have done so, and failed to do so. So for the reasons Mr. Rowan set forth in his brief and will address here, we think that the court does lack jurisdiction. But even putting aside that concern, we think the government's conduct in this case violated both the separation of powers and the Bail Reform Act. And as the court was just discussing, the district court's order clearly was appropriate in order to protect Ms. Fauci's or Sebastian's right to prepare for her defense. So starting with the- Let me ask you something about the procedure of this case. My understanding is perhaps not long after the notice of appeal, the government, not the government who is present here, we have different players, the U.S. Attorney's Office moved to stay the prosecution of your client, is that correct? That's correct. Any explanation for that? If anything, it seems the prosecution have been easier with her released and wherever she's located, she's not under detention anywhere. I am not for the government. There was nothing in the motion as to why. Is there anything in that you can say as to why the prosecution was staying? I'm not sure. That was the government's motion. I can't speak to that issue. You may have known about it, but certainly it was the government's motion. Proceed. Sure. So one of the most fundamental separation of powers principles is that judicial decisions cannot be ignored or suspended by executive officials. The judge here found that Ms. Fauci's or Sebastian's is not a flight risk and not a danger to the community, and on that basis, ordered her released. And released means to be freed from confinement, freed from imprisonment. So the marshal violated that order by simply transferring her to the custody of another agency, keeping her in detention. Well, what, if any, effect do you give to the fact that ICE was first in line? ICE detained her, then indicted, then granted bail by the magistrate judge in a form order. There's no findings of fact, conclusions of law, anything, it's just a form. You fill out and she's signed. And so then they have a detainer when they bring her up here under that writ for her pretrial hearing. And when the hearing's over, they, by means of the detainer, take her back into custody. So my question is, apparently you don't give any weight to the fact that ICE acted first. Your Honor, we think the fact that ICE acted first here is important. The fact that ICE- Well, I agree, but in what way? Because ICE's interests were fully represented at the detention hearing that led to Ms. Fauci's or Sebastian's release order. In fact, the government's only witness at that detention hearing was an ICE officer. So there's no- But the hearing, who was the lawyer for the government at the detention hearing? The lawyer was somebody from the U.S. Attorney's Office, is my understanding. But again, in a criminal proceeding, the party is the United States. The United States is fully able to represent the interests of ICE, particularly in a case like this one where they were fully aware. ICE and the U.S. Attorney's Office worked together at every single step of this prosecution. The initial workplace raid was coordinated. The ICE referred her for prosecution. And at the hearing, an ICE officer actually testified. So there's no sense in which ICE's interests were absent from the detention hearing. Had ICE wanted her to remain in custody, that could have been raised at the time. The government certainly could have requested that appearance at her immigration hearings be made a condition of her release. ICE, the government could have also requested temporary detention under 3142D, which in our view is the appropriate mechanism for transferring a criminal defendant from pretrial custody to immigration custody. And it did none of those things. So the fact that ICE- It seems to me you're acting as if ICE's interest in your client and continuing detention was a surprise. I mean, she was delivered as Judge Barksdale and everybody, so wherever Judge Barksdale just referenced it, with a detainer. And that was as much part of the general knowledge as anything. And so the import of that is once the hearing was over and whatever Judge Reed decided, that detainer was still there. She was subject to the exercise of ICE's rights, statutory rights. We here decide to some extent if one decision overrides the other, but ICE's desire to take her back into custody seems to me was known to those present at that hearing. I don't believe so, Your Honor. The detainer was not disclosed at the hearing. It couldn't- Not disclosed, but the delivery, I find it hard to believe that her lawyer didn't know that there was a detainer on her. Her lawyer did not know. And if you read the transcript- That is the lawyer's fault, it seems to me. I don't believe that's right. Even the government's lawyer at that point did not have access to a copy of the detainer. And that was discussed before Judge Reed's. And ultimately, the detainer was attached to a filing in the district court, but there was considerable uncertainty over whether the detainer existed, when it had been put on her. All of that was uncertain at the time of the detention hearing. And again- You're not challenging there was a detainer placed in the water up here after she was indicted? You're not challenging that? No, but in our view, the detainer cannot, the detainer's merely a request to the U.S. Marshal. And it's simply asking the U.S. Marshal to hold custody of her. Once a court has made a determination that she's not a flight risk, she's not a danger, and she deserves to be released, the detainer cannot, standing alone, justify ICE detention in contravention of the court order. And again- Just so we're keeping the facts straight, the detention hearing you're talking about, at which representative for ICE testified, are you talking about the detention hearing in September, as opposed to the hearing before Judge Reeves in October? Yes, so at the September 3rd detention hearing, a representative from ICE's Homeland Security Investigations Unit, which was the unit that coordinated the raid, testified at the detention hearing. I just want the record clear for the purposes of this recorded argument. All right, go ahead. Yes, and a representative from ICE also testified at the motion on reconsideration hearing. And I actually think that testimony is incredibly important to the questions that we were just, that you were addressing with counsel for the government about her ability to prepare for trial. So at that hearing, the government's counsel said this was an issue loosely raised, but it was clearly raised and it was discussed at length. The government defense counsel clearly stated that they were not able to meet with her, that the Louisiana detention facility was hours away, that, you know, I don't believe the ICE officer could even confirm that calls with counsel were confidential. I believe he said all phone calls were recorded and he was not able to say whether or not phone calls and video calls were free. So clearly the district court had plenty of evidence before him to conclude that this was meaningfully interfering with her right to counsel and her ability to prepare. He didn't make any findings of fact on that, did he? Well, he ruled on alternative grounds, but he did make findings. He clearly states- No, findings of fact on interference. This fifth and sixth amendment claim you raise on appeal, which I'm not sure, I don't believe was raised adequately in district court, but the district judge didn't make specific findings of interference, did he? I believe he did. And I believe the government has conceded that the issue was raised below and Judge Reeves's order says, at the beginning of his December 19th order, he says this interfered with her ability to meet with defense counsel. And I do think that's a specific finding of fact that supports the decision. To the extent there's any lack of specificity in the findings, we would ask for a remand rather than a reversal because we think the district court should have the opportunity to make specific findings if that's what's warranted. But we think that there are findings- Did the district judge make conclusions of law on that interference and how it violated the fifth and sixth amendment? Well, he, again, this was a decision made to preserve her ability to prepare her defense. I'm not sure I agree with the government that a specific fifth or sixth amendment violation needs to have already been found. The district court has brought authority over- Do you think you can just raise it on appeal? No, I think she raised it below. And I think what the district court has the authority to do is issue an order that protects her rights and that ensures she will be able to meaningfully prepare her defense. So the fact that the district court has not yet found a fifth amendment violation, we don't think would be dispositive here. We think the district court has broad authority to manage the proceedings before it, particularly when what's at stake is a criminal defendant's ability to participate in her defense, to prepare for her defense. That's something dating back to Stack v. Boyle. The Supreme Court has recognized the importance of bail for that purpose. And we think the district court has broad authority to ensure that she's able to exercise her constitutional rights. Ms. Lopez, let me ask you something that's near the conclusion of the decision by Judge Rees, his more thorough opinion on enforcement. And he seems to acknowledge that there is authority for both ICE and himself, or whoever the district court may be in a criminal prosecution. And he's seeking guidance ultimately, initially from us, he actually says, the easiest resolution administratively speaking would be if magistrate judges could be relieved from their obligation under the Bail Reform Act to conduct detention hearings. So everyone could uniformly defer to ICE detention. Magistrate judges on the other hand are bound by statute to do this. And he's looking for guidance. It seems to me, and I don't wanna overstate Judge Rees, whatever his actual conclusions on this may be, he is, I think, acknowledging that it's not clear. It seems to me what that seems to me based on is that there's independent statutory authority for what each of the actors here has done, both the district court as well as ICE. And that there's nothing statutorily that says how the two are to operate together. And a decision that's come from a lot of other, some other courts is that they do act independently and they just have to be some appreciation by all involved of the other's role, but each has an independent role. And it seems to me there's not clear statutory direction. There's no explicit statutory direction as how these two work together. And so what certainly Ms. Gray is proposing here that each has their own lane to be in and Judge Rees made his decision. Now it's back to ICE to re-detain Ms. Balthazar. So what do you make? Isn't Judge Rees basically acknowledging that there's not clarity here? He doesn't even assert that he clearly has authority to be overriding ICE's detention? I don't think so, Your Honor. And a couple of points in response to that. So first, the final point the government made, I think is a concession that ICE's conduct in many cases can be governed by and can violate the release order. So the government's position is that in a case where ICE's conduct is pretextual or ICE is holding a defendant for the purpose of her criminal trial, that that can in fact violate the BRA release order. So I think that alone disposes of the idea that these are entirely separate spheres and that a BRA release order can never have any consequences for ICE. But I think more generally, I think what distinguishes this case from most of the other courts' appeals is that there is no dueling mandate, no dueling statutory mandates in this case. Here, ICE's power to detain her is simply discretionary. ICE may detain somebody pending removal proceedings. If she had a certain criminal conviction or if she had a final order of removal, then detention would be mandatory and there would be a real conflict when the BRA requires somebody to be released and the INA requires somebody to be detained. But that's not the situation here. The situation here is the BRA requires her to be released because she's not a flight risk and not a danger. And ICE cannot exercise its discretion in a way that directly undercuts both the order that the magistrate judge issued and the factual basis for that order. See, here we're once again getting out of sequence because ICE detained her first and then they released her only to come up here to enter a plea in her criminal matter. So I did not understand your appeal as challenging ICE's authority to detain her in the first instance. You're not. We're not. We are arguing that once ICE has chosen to refer her for prosecution, the criminal process has been invoked and that carries with it certain consequences, which is the defendant gets a BRA hearing and the magistrate judge, a judicial officer exercising judicial power is required to make certain findings. And if it makes the finding that the defendant is not a flight risk and not a danger to the community, the Congress has directed that that person be released. And there's no plausible understanding of the word released that encompasses simply transferring her to another detention facility. There's no, that can't be right. And accepting the government's argument here would mean that BRA release orders have no meaning whatsoever or a huge swath of criminal defendants, namely non-citizens who are subject to removal proceedings. And for those individuals, a release order would never actually mean release. It would mean that ICE could simply pick them up instead. And that can't be the case. Imagine a district- Why can't it be the case? Because we think, again,  it's meant to preserve a criminal defendant's ability to prepare her defense as long as she's not a flight risk or a danger. And it can't be the case that for all of those individuals, even though they meet the criteria for release, federal detention is nonetheless appropriate because of all the concerns we were addressing earlier. I mean, the government concedes in their brief that ICE often detains people, routinely detains people out of state. And so it is a pervasive problem that would interfere with the ability of a non-citizen criminal defendant to prepare his or her defense. And again, imagine the judicial officer, after considering all the evidence, ordered her released on very specific conditions like posting tens of thousands of dollars in bond or entering a treatment facility, something like that. ICE's decision to take her into custody anyway would nullify all of the conditions of release that a district judge has deemed appropriate. So we just think that cannot be the way to reconcile these statutes. And section 3142D of the statute actually demonstrates that Congress was well aware non-citizens would sometimes be criminal defendants. Congress was well aware that ICE would sometimes have an interest in those criminal defendants. And it set forth a particular procedure for the government to follow in those cases. Basically, if the court finds the person's a non-citizen and might be a flight risk or a danger, then contemporarily detain the person for 10 days so that ICE can assume custody. And the best reading of the DRA in our view is that if that procedure is not followed, the government can't just engage in self-help by simply taking the person into custody anyway. The government's position renders 3142D meaningless because it's sort of heads I win, tails you lose. The government can use 3142D to temporarily detain somebody, but it can also just detain them anyway, regardless of whether that procedure has been followed. So in our view, that can't be the best reading of the Bail Reform Act. And again, all that's needed to affirm the judgment here is to find that it was unlawful for the government to immediately transfer custody of Ms. Balthazar Sebastian to ICE after the release order, because there's no sense in which she was ever released from imprisonment. At the very least, it was unlawful for ICE to transfer her to custody when doing so directly contravened the conditions that the magistrate judge had deemed appropriate, namely that she stay in the jurisdiction so that she could meet with her counsel. Well, you say transfer, someone else might say return, return to custody, not transfer to custody, return to custody pursuant to a lawful detainer. And that would not be released either, even putting aside the fact that, again, because ICE chose to refer her for prosecution and ICE invoked the criminal process, invoked the Bail Reform Act, and should be- Well, you say ICE chose to refer her, surely we'll have a record of that. She was in detention and then she was indicted later in the same month, I believe. And so someone requested that she be brought up to Jackson, Mississippi, so she could enter a plea to the charge. Correct, and I believe the government's brief concedes that it was only through ICE's actions that she was brought to the attention of the U.S. Attorney's Office for prosecution. I see my time has expired. Ms. Balthazar's session was ordered released for good reason. The government has never challenged any of the findings underlying the release order. The release order should be honored and the district court's judgment should be affirmed. Ms. Lopez, thank you for your explanation of your view on this. Mr. Rowan. Good morning, your honors. May it please the court, Matthew Rowan on behalf of the amicus curiae R Street. As the past 40 minutes or so demonstrates, the merits of this case indicate a number of very thorny statutory and constitutional issues. But respectfully, we think that it would be a mistake to reach those issues and that those thorny issues must await another day, as the proper disposition of this appeal would be to dismiss for lack of appellate jurisdiction. Now, the government concedes that it did not challenge the magistrate judge's September 3rd release order. They conceded that in their brief at page nine and again at footnote five of their reply. Ms. Gray then further conceded earlier this morning that the government here does not challenge the defendant's release from criminal custody. In our view, that concession should end the case because there are only two ways to get to court from a bail reform act order in the criminal process. One is through section 3545C and section 3731, and the other is through the collateral order doctrine. They wrote both of those arguments in footnote five of their reply brief, but neither one of them works for a number of reasons. So the collateral order doctrine argument can be quickly dispensed with. The Supreme Court has made clear a number of times that in the criminal context, the collateral order doctrine should be applied with the utmost strictness, that's from Midland Asphalt, as Judge Smith made clear last year in United States against Pittman. The Supreme Court has actually never expressly recognized government appeals pursuant to the collateral order doctrine in the criminal context. Only appeals brought by defendants implicating their fundamental constitutional rights have been authorized pursuant to the collateral order doctrine in the criminal context. The only case the government cited in their reply brief was a defendant appeal from a competency ruling that implicated a due process holding, and also it would create a square circuit split for this court to exercise jurisdiction pursuant to the collateral order doctrine of the 11th Circuit in a case called Fernandez Toledo, which is 737 F. 2nd, 912, squarely rejected the argument that the government can take collateral order appeal from a bail determination saying, quote, that the government has no sufficiently important right threatened by a bail determination, end quote, to justify an interlocutory collateral order appeal. So all that the government has left then is sections 3145C and section 3731. But respectfully, the language of those statutes is very clear. Section 3145C authorizes an appeal from a release order or from an order denying a motion under 3145A for revocation of or amendment to the release order. Now, Ms. Gray conceded, and the government conceded in their briefs, that they didn't challenge the magistrate judge's decision. That means there was no 3145A motion for revocation of or amendment to the release order. So right there, that should end the case. There is no appeal from a release order, and there was no motion to challenge the conditions of release as she again conceded earlier today. So the only potential source of jurisdiction that there could be left is under a liberal construction of section 3731, which the government noted in their brief at footnote five of their reply, that the text of the statute does say that the statute shall be liberally construed. But respectfully, there's a fundamental difference between liberally construing a statute and simply ignoring its terms. And again, section 3731 is very clear. The only types of appeals that the third paragraph, which is the only paragraph that's relevant here, authorizes are appeals from release orders and denials of 3145A motions for revocation. And again, what Ms. Gray said earlier was that all that's on review here is whether the civil immigration process must yield when there's a BRA order. Okay, just looking at the practicalities of this, we had this form signed by the magistrate judge. Then when defendants brought back up here to Jackson for a pretrial hearing, then she moves to have her bail held valid as opposed to her detention by ICE. And the judge issues a less than a page order saying he'll provide a more thorough opinion later. Then the government moves for reconsideration and the government and the judge in December issues his enforcement order. So respectfully, don't interrupt me. So in effect, Judge Graves certainly felt like this was an ongoing proceeding. He considered the motion for reconsideration, which stayed that October ruling. He issued an opinion and not that it's controlling, even stated the government had the right to take an appeal. And he hoped it would so that some order could be created here. So there's a lot of merit to the contention that the December enforcement order is the applicable order from which the government could and should have appealed on a motion for reconsideration. So address the procedure that was followed and say why it would not apply to this December enforcement order. It was an ongoing process. Mr. Rowan, as you probably appreciate, even though your time is up, you have the time you need to respond to his question. Thank you, Judge Southwick. And I apologize for interrupting you. You cut out on my internet. So I thought that you were done. I apologize for that, Judge Barksdale. So I have four answers to your question. So the first is that respectfully, you had the procedural history wrong. So what happened here was- That's all right, go to two, three, and four then. Okay, so, well, I do think it's important because so section 3145 allows the United States to challenge magistrate judge release orders. And those challenging motions, which are governed by section 3145A, must be brought within 14 days. That's pursuant to Federal Rule of Criminal Procedure 59A. So, and the government concedes it didn't file such a motion here. All right, I'm satisfied with your answer and we'll just check it again. Thank you. You're welcome. And then as to the sort of practicalities that you asked- I don't need any more answer unless one of the other judges wants. We'll just check it again. Thank you very much. Consider the question answered, Mr. Bowen. I can tell you have more to say, but your time is up and we do have your very thorough and excellent brief on this. Well, despite all the arguments, I believe we have a little bit more time for Ms. Gray. And I'll be really quick, Your Honor. So- You have five minutes. You don't need to worry about shortening. I didn't mean to cast that away. So just to clarify a few points here. So Defense Counsel just said release means free from confinement. Release means free from criminal confinement. The release order itself specifies that. Counsel said the ICE's interests were represented by the AUSA, the bail hearing. That's not right. An ICE agent only appeared for the first time at the November hearing once Judge Reeves implicated ICE's interest in this case. At the, let's see, ROA 521 through 22, an HSI agent came to describe, in the September bail hearing, came to describe HSI's role in the poultry sweep and the resulting prosecutions, which the U.S. Attorney's Office was involved with from the beginning. I did not refer this case to the U.S. Attorney's Office. The U.S. Attorney's Office was always involved and there were press releases from the U.S. Attorney himself indicating that. The fact that counsel said the lawyer didn't know that there was the ICE detainer on her and wasn't aware of the ongoing removal proceedings, that's also incorrect. The defense counsel in the district court proceedings, not counsel today, had immigration counsel testify at her September magistrate bail hearing in an effort to try to support the conclusion that she was not a risk of non-appearance. The district court very clearly did not make any findings of facts. The district court in dicta and in the course of distinguishing the Third Circuit's case, said that all defense bar in Mississippi may have issues with traveling to Louisiana, including to an ICE facility that this defendant was not even detained in. He described issues that coderized in a broad way, clearly no findings of fact were made. One other factual distinction here, the conditions of release in this case and really in any case are applicable only to the defendant. If ICE detains the defendant and in Ms. Lopez's example, if the defendant had put up a big bond amount, if ICE detains that defendant, that doesn't violate the defendant's conditions of release. The defendant herself has to violate her own conditions of release. Section 3142D is not the sole mechanism for transferring custody. It wasn't even invoked here because the magistrate judge didn't make this predicate to findings that would make that section applicable. And one other point here, well, two other points here, if I may. So ICE's detention after that 10 day period does not render section 3142D meaningless because again, that section was not even invoked here, didn't apply in this case. And the entire purpose of section 3142D is to notify immigration officials or local authorities. The implication is that those authorities were not already aware of the defendant, but ICE had custody of this defendant first.  the fact that ICE's detention of this defendant was not mandatory does not change the analysis. Judge Reeves is still having to make inferences in comparing the two statutory schemes. According to Morton v. Mancari in the Supreme Court's case, you have to have clear and manifest congressional intent that one statute supersedes the other. And so in pursuance of that, Congress would have had to have said in the Bail Reform Act, which again, covers only criminal bail, that a release order under the BRA prescribes ICE's detention or binds the entire executive branch. Nowhere does it even come close to saying that. The unanimous circuit authority, which has not been touched on today, but I certainly think the briefs do a fine job of touching on it. The DC Circuit case, for instance, that involved mandatory detention, but its decision in no way hinged on mandatory detention. And in fact, that wasn't brought up during oral argument or in briefing at all. So it focused on the separate authority of the statutory schemes. And the fact that 8 U.S.C. 1226A, the discretionary detention scheme, and 1226E, the bar on judicial review of ICE's discretionary detention decisions, was enacted after the 1984 Bail Reform Act under the principle invoked by Judge Reeves means that Congress was aware of the BRA's requirements of release when it authorized ICE to detain and prohibited- I'll give you one more sentence. Prohibited judicial review of those discretionary detention decisions. I'm gonna get you a period before, at the end of the sentence, but I think that's all the time we have. I know all the rest of them had more to say as well. But we appreciate the able arguments by all of you here. Obviously an important case for our circuit address, maybe in distinguishable ways by other circuits already, we will have to deal with that, but excellent advocacy, thank you.